COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Bumgardner and Kelsey
Argued at Alexandria, Virginia


JOSE ALBERTO NAVARETTE-RAMOS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2152-03-4                      JUDGE JAMES W. BENTON, JR.
                                                         NOVEMBER 16, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                            LeRoy F. Millette, Jr., Judge

            William A. Boge for appellant.

            Donald E. Jeffrey, III, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        The trial judge convicted Jose Alberto Navarette-Ramos of the felony of recruiting a

juvenile to participate in or become a member of a criminal street gang in violation of Code

§ 18.2-46.3.  Navarette-Ramos contends the evidence was insufficient to prove the gang has as one

of its primary objectives the commission of a predicate criminal act, which he argues is an element

of the statutory definition of criminal street gang.  He argues, therefore, that the evidence failed to

prove beyond a reasonable doubt an essential element of Code § 18.2-46.3.  We affirm the

conviction.

                                           I.

        The evidence proved that a juvenile girl went with her boyfriend and his friend to "meet . . .

the other people from the [boyfriend's] gang, his friends."  They went to a bedroom in the apartment

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

where Jose Alberto Navarette-Ramos resided. Navarette-Ramos was present with three other men and two women, some of whom were juveniles. Another man later came into the room.

As some of the people in the room drank beer and others smoked marijuana, several of the men spoke to the juvenile girl about the gang, which they identified as MS-13. They asked if she was a member of a gang and if she wanted to join their gang. While explaining the gang to her, they asked her about her home environment and asked whether she had problems at home. When she said her mother would require her to work after she turned eighteen, the men told the juvenile girl she could live with them if she had no place to live. They promised to "give . . . food, a roof where to live and . . . take care of [her], but [said she had to] be part of the gang for [them] to help. . . ." During an occasion when the men left the room, the juvenile girl asked the two teenage girls if they wanted to be members of the gang. They said "no because this is too dangerous to be in."

After the men returned, the juvenile girl decided to join the gang, indicating she had problems at home. One of the men explained that to join the gang she had to either submit to a physical beating by the gang members or have sexual intercourse with multiple gang members. Two hours after she entered the apartment, the juvenile girl decided to have sexual intercourse with five of the men. Navarette-Ramos, the last man who had sexual intercourse with her, said "Welcome to . . . the gang. You're part of us now." The juvenile girl remained in the apartment until early the next morning, when she left because she was experiencing pain.

One of the females in the apartment was sixteen years old. She testified that earlier in evening, before these events occurred, Navarette-Ramos told her that he and the other members of the gang would be recruiting a person into the gang that evening. She named the gang, and she described the gang signs, the gang colors, and various gang activities which she had observed. She identified all of the people who were in the apartment with the juvenile girl that evening. She also

testified that she and the other female were told to leave the room while the juvenile girl remained with the six men and that she was told "why that was happening."

The teenager further testified that she dated a member of the gang who was in the room during these events. Although she often "hung out" with the gang, she was not a member because she "had not been beaten-in nor sexed-in." She also testified she was present when her boyfriend put a gang tattoo on Navarette-Ramos. On one other occasion, she was present when Navarette-Ramos entered a house and yelled at her and others to get on the floor because Navarette-Ramos, her boyfriend, and another man had just shot at members of another gang.

A police officer testified as an expert "concerning gangs in general and . . . MS-13 in particular." He identified numerous crimes that members of this gang had been convicted of in the region. Those crimes included "homicide . . . , malicious woundings, weapons violations, shooting a gun on school property, armed robberies, simple assaults . . . [and] traffic tickets DUI's." He testified that the gang has units in other cities and distributes drugs nationally. He also testified that the gang has been certified as being a criminal gang in many jurisdictions and is "a criminal enterprise." He further testified that although some members of the gang joined for reasons other than to participate in criminal activities, all of the gang members support the criminal activity of the gang.

In addition, the evidence contains records of criminal convictions for gang participation for three of the men who were in the apartment with the juvenile girl. The evidence also contained evidence of other criminal offenses committed by two of the men who were in the apartment and criminal convictions of another man who was associated with the gang.

Navarette-Ramos testified and denied being a member of a gang. He also denied that these events occurred in his apartment, and he denied knowing the juvenile girl and the other teenager

who testified about events in the apartment. He testified that he was intoxicated when someone put a tattoo of a gang symbol on him without his consent.

The trial judge convicted Navarette-Ramos of recruiting a juvenile to become a member of a street gang in violation of Code § 18.2-46.3, but acquitted him of the charge of violating Code § 18.2-46.2 (requiring proof the accused actively participated in a criminal street gang and knowingly and willfully participated in a predicate act committed for the benefit of or in association with a street gang).

II.

The offense for which the trial judge convicted Navarette-Ramos provides, in pertinent part, as follows:

> Any person age 18 years or older who solicits, invites, recruits, encourages or otherwise causes or attempts to cause a juvenile to actively participate in or become a member of what he knows to be a criminal street gang is guilty of a Class 6 felony.

Code § 18.2-46.3(A). Navarette-Ramos contends the trial judge erred in convicting him because "[t]he Commonwealth's evidence, from the record, utterly failed to prove beyond a reasonable doubt, that one of the primary objectives or activities of MS-13 is the commission of a predicate criminal act, as defined by . . . Code § 18.2-46.1."[1]

---

[1] Code § 18.2-46.1 contains the following definitions:

> "Act of violence" means those felony offenses described in subsection A of § 19.2-297.1.

> "Criminal street gang" means any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities (ii) which has an identifiable name or identifying sign or symbol, and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of

The record discloses, however, that the issue Navarette-Ramos raises on this appeal was never raised at trial. At the conclusion of the Commonwealth's evidence, Navarette-Ramos made a motion to strike the evidence, arguing that the Commonwealth failed to establish a prima facie case for gang participation because no evidence proved "prior criminal activity." In addition, the attorney for a co-defendant made extensive arguments, which Navarette-Ramos adopted, that the evidence failed to prove the co-defendant engaged in "predicate criminal acts," that the evidence failed to prove the co-defendant knew the females were juveniles, and that the evidence did not prove an "act of violence" necessary to establish a "predicate criminal act," as defined by Code § 18.2-46.1. The trial judge denied these motions to strike.

At the conclusion of all the evidence, the attorneys made these same arguments: the evidence did not prove (1) predicate criminal acts, (2) acts of violence necessary to establish predicate criminal acts, (3) knowledge that the teenager was a juvenile, and (4) the accused was "an active participant in . . . or associate of this gang." Navarette-Ramos adopted these arguments and further argued (1) that he was not present in the apartment, (2) that he has no prior criminal record, (3) that he is not associated with the group, and (4) that he was not involved in any activity described as a "predicate act." The trial judge denied these motions.

---

which is an act of violence, provided such acts were not part of a common act or transaction.

"Predicate criminal act" means (i) an act of violence; (ii) any violation of §§ 18.2-46.3, 18.2-51, 18.2-51.1, 18.2-52, 18.2-53, 18.2-55, 18.2-57, 18.2-57.2, 18.2-121, 18.2-127, 18.2-128, 18.2-137, 18.2-138, 18.2-146, 18.2-147, subsection H, H 1 or H 2 of § 18.2-248, §§ 18.2-248.01, 18.2-255, or § 18.2-255.2; (iii) a second or subsequent felony violation of subsection C of § 18.2-248 or of § 18.2-248.1; or (iv) any violation of a local ordinance adopted pursuant to § 15.2-1812.2.

On brief, Navarette-Ramos now argues as follows:

> [I]n order for the trial court to have properly convicted [him], it had to find that the Commonwealth proved beyond a reasonable doubt that MS-13 has, <u>as one of its primary objectives or activities, the commission of a predicate criminal act</u>. The Commonwealth's evidence, from the record, utterly failed to prove, beyond a reasonable doubt, <u>that one of the primary objectives or activities of MS-13 is the commission of a predicate criminal act</u>, as defined by Virginia Code § 18.2-46.1. (emphasis added).

Because Navarette-Ramos did not raise at trial the issue he now presents on appeal, we are barred from considering it by Rule 5A:18.

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

<u>Id.</u> This rule of appellate procedure precludes Navarette-Ramos from raising on appeal an issue that he did not raise at trial. <u>Correll v. Commonwealth</u>, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004).

We also hold that because the argument Navarette-Ramos now presents is based upon a misreading of the statute, the record does not establish either the good cause or the ends of justice exception. Initially, we note that Navarette-Ramos correctly asserts that Code § 18.2-46.3 requires the Commonwealth to prove he recruited a person to "become a member of . . . a criminal street gang," and that, to satisfy the definition of "criminal street gang," the Commonwealth had to prove the "organization, association, or group of three or more persons . . . has as one of its primary objectives or activities the commission of one or more criminal activities." Code § 18.2-46.1. We disagree with his further assertion that one of the primary objectives or activities must be, as he argues, "the commission of a predicate criminal act, as defined by . . . Code § 18.2-46.1." The definition of criminal street gang does not limit the "primary objectives or activities" to predicate criminal acts. Rather, the proof must establish that

one of the primary objectives or activities of the group is "the commission of one or more criminal activities."  Id.

Simply put, the "criminal activities" referenced in part (i) of the definition of "criminal street gang" are not narrowed or limited by the definition of "predicate criminal act." Furthermore, the evidence was sufficient to prove beyond a reasonable doubt that the group had as a primary activity the commission of criminal activities.

For these reasons, we affirm the conviction.

Affirmed.